For plaintiff: Gertrude Friedman.

For defendant: Thomas L. Carty.

Rhode Island Hospital
Trust Company, Trustee
u/w of John Johnston, }Law No. 91159
vs.
J. B. Farnum Company

DECISION.

April 1, 1935.

CURRAN, J. This is an action of assumpsit brought to recover certain moneys, some of which is claimed to be due as rent under a written lease for a term of years, and the balance of which is claimed to be due under an

oral letting from month to month. There is a plea of the general issue and a special plea in the nature of a plea in set-off.

The case was on the jury trial calendar but after a jury was impaneled the parties agreed to withdraw the case from the jury and to submit it to the Court, thereby waiving jury trial. The case was then heard by the Court without the intervention of a jury.

John Johnston, late of Woonsocket, died on February 12, 1928. During his lifetime and at his death, he was the owner of real estate located in Woonsocket, out of which the present litigation arises. By a written lease, dated June 15, 1922, Johnston demised to the defendant a store, basement, the most easterly tenements on the second and third floors and seven attic rooms, at 91 North Main Street in Woonsocket, for the term of ten years from January 1, 1922, to December 31, 1931, at the rent therein stated. In this instrument it was "agreed that if the lessee so desires, it may make any changes, alterations or repairs in the demised premises, including erection and installation of an elevator on the outside of said building * * *". It does not appear that at this time the lessor undertook to pay any part of the cost or value of the changes, alterations or repairs, in case any should be made.

By another written lease, dated November 21, 1923, Johnston demised to the defendant "all the premises above the ground floor not already leased to the lessee, in the building at the corner of Snow and North Main Streets" in Woonsocket for the term from December 1, 1923, to December 31, 1931, for the rents therein stated. This lease also demised to the lessee the undertaking parlors and the rooms below them from July 2, 1926, to December 31, 1931, for the rent therein reserved. These premises and the premises covered by the earlier lease were in the same building. In this lease it was "agreed by and between the parties thereto that if said lessee should install on the premises hereby demised a steam

heating apparatus and/or electric lighting and wiring, then the lessor shall at the termination of this lease, or any renewal thereof, pay to the lessee the fair value of said improvements, and if the parties shall not be able to agree upon said value, then the same shall be determined by three arbitrators. * * *"

Under date of February 28, 1924, Johnston and the defendant entered into an indenture which recited the instruments of June 15, 1922, and of November 21, 1923, above referred to, stating in the recital that Johnston thereby "did lease *certain portions of the premises hereinafter described*"; another recital mentions two instruments, dated November 27, 1922, and June 3, 1923, respectively. A subsequent recital states with respect to these instruments that Johnston and the defendant "did agree with each other that the lessee should make certain improvements and affix certain fixtures to the premises, and that in certain contingencies the lessor shall pay the lessee the fair value thereof, to be agreed upon by arbitration". The same instrument further recites that "it is deemed advisable by the parties hereto that all their agreements in respect to the said premises shall be consolidated in one writing". The indenture, then, by agreement of the parties, in the first paragraph, makes "null and void" the leases of June 15, 1922, and November 21, 1923, and the "agreements" of November 27, 1922, and of June 3, 1923, respectively; it leases to the defendant, its successors and assigns, a wooden frame building at the corner of Snow and North Main Streets in Woonsocket *and all the yards surrounding the same* "and now used in connection therewith" for the term commencing the day of the date of its execution and ending on December 31, 1931, for the rental therein stated. This lease is subject, as to a portion of the premises, to a lease to Alexander Gilbert, Inc., the rights to the rents reserved, on which the lessor retained and covenanted to perform all the lessor's covenants with Gilbert, Inc. There is the usual les-

see's covenant to pay rent, with a fifteen days' default clause; the lessee may make non-structural alterations, changes or repairs, but no provision for the lessor's paying for the same is contained in the lease; if the lessee becomes bankrupt, or if a permanent receiver is appointed for it, the lessor has the option to declare the lease at an end and to retake possession of the premises; if there is damage by fire and the lessor elects not to repair, the lease terminates at the time of the fire, but there is a renewal right on the part of the lessee for a further term of five years, to be exercised in the manner set forth, at a rental specifically provided for.

The 10th, 11th and 12th clauses of the lease are as follows:

"10. In case the renewal above provided for shall not be made and this lease terminates the 31st day of December, A. D. 1931, then the lessor covenants and agrees to pay the lessee the sum of $4984 in full payment for all improvements made and fixtures attached to the demised premises, including heating apparatus, elevator and electrical wiring and fixtures.

11. In case said lease be renewed as above provided, then upon the termination of said renewal, to wit: on the 31st day of December, A. D. 1936, the lessor covenants and agrees to pay to the lessee the sum of $3764 in full payment for all improvements made and fixtures attached to the demised premises, including heating apparatus, elevator, electrical wiring and fixtures.

12. This indenture shall be binding upon the parties hereto and their respective heirs, executors, administrators, successors and assigns, and all covenants and agreements herein contained shall be taken to be made by and with the heirs, executors, administrators, successors and assigns of the respective parties hereof."

A contest over the probate of Johnston's will delayed the appointment of an executor for several years. The plaintiff was named as trustee of the residue of Johnston's estate and took title to the property covered by the lease of February 28, 1924, as part of the trust estate. Correspondence between the plaintiff trustee and the defendant indicated that there was some question as to the solvency of the estate. The rent was not payable in advance and the defendant paid the rent due under the terms of the lease, including that due and payable for the month of September 1930. It did not pay the rent for the month of October, which was payable on November 1, 1930. Instead the defendant made a book entry on its own books, crediting itself and charging the plaintiff with the sum of $410 as the amount of rent payable November 1st for the month of October, but did not communicate this fact to the plaintiff. The defendant claimed the right to do this because of the supposed insolvency of Johnston's estate and the fact that it claimed that $4984 was due to it under the 10th clause of the lease of February 28, 1924, payable January 1st, 1932, although at that time it had not notified the plaintiff that it had elected not to renew the lease.

On November 27, 1931, the plaintiff trustee notified the defendant in writing that in view of the defendant's failure to comply with the covenants of the lease of February 28, 1924, with regard to the installment of rent due November 1, 1931, and other breaches of said lease, it "does hereby declare said lease broken and no longer binding upon it and does hereby terminate and cancel the same and make entry on the leased premises and take possession thereof in accordance with the terms of the lease. You are hereby notified to deliver up possession of said premises forthwith." This notice was delivered to the defendant on the leased premises by a duly authorized representative of the plaintiff trustee, who entered for the purpose and with the intent of taking possession and ending the tenancy of the defendant under the

128

lease. The defendant did not vacate the premises but claimed that because of the insolvency, either actual or prospective, of the Johnston estate, it was not in default because of the non-payment of the rent as it had a right to withhold payment on the account of the moneys which it claimed would be due it on June 1, 1932.

The defendant's second plea alleges an indebtedness from the plaintiff "in its capacity as trustee" to the defendant in the sum of $4,984, existing "at the time of the commencement of this suit". Now this plea, reciting the lease of February 28, 1924, quotes the 10th clause thereof and avers that the defendant, during its occupancy of the premises "under the aforesaid lease, made certain improvements," &c., and by virtue of the provisions of the lease became duly entitled to the sum of $4,984 as provided in the lease, and also that the lease terminated on December 31, 1931.

At the trial it did not appear when the improvements mentioned in the 10th clause of the lease of February 28, 1924, were made, but it is a fair inference that they were made before the execution of that instrument, and in accordance with the terms of the second recital such improvements and alterations were made under the terms of the agreements of November 27, 1922, and June 3, 1923.

These instruments were not produced at the trial, neither party being able to find them. Therefore, the only information of their contents is that stated in the indenture of February 28, 1924. From this it appears that the improvements were made and the fixtures installed under the documents of November 27, 1922, and June 3, 1923, and not under any lease. Another "indenture" between the parties not recited in the indenture of February 28, 1924, and not voided thereby, was produced at the trial (Exhibit 7). This discloses that at the date of Exhibit 7, viz.: July 14, 1922, it was contemplated that an elevator would be installed under the permission contained in the lease of June 15, 1922, but the fact appears to be that if an elevator was installed, it was in pursuance of the terms of one or the other of the instruments of November 27, 1922, or of June 3, 1923.

The defendant claims that the plaintiff as trustee is bound by the tenth clause of the lease of February 28, 1924, to pay to the defendant the sum of $4,984, and that this alleged indebtedness to the defendant may be set off in part against the plaintiff's claim for rent and other moneys asserted by the plaintiff in this suit.

If this claim of defendant is good against the plaintiff trustee, it must be because the covenant "runs with the land". The moneys claimed by the plaintiff accrued since the death of Johnston and after the defendant had acknowledged the plaintiff as its landlord, and the covenant to pay, on which the defendant relies, was made by Johnston in the lease of February 28, 1924.

There are many difficulties in the way of holding that Johnston's covenant "runs with the land". In the first place, each succeeding lease enlarged the leased premises. The earliest lease covered only part of the building at the corner of North Main and Snow Streets. The second lease covered additional parts of the same building and the third lease covered additional building space and the yard around the leased building. When the last lease was made the obligation of Johnston existed under the intermediate agreement referred to in the second recital of that lease. Certainly immediately before the making of the last lease, the obligation would not run with the land, because it did not grow out of any lease at all but out of one or the other, or perhaps both, of the collateral agreements. We do not think that the insertion of the tenth clause of the last lease had the effect of fastening to all the land the value of all of the improvements. The latter may have pertained only to the premises covered by the first lease or to those covered by the second lease. These improvements could not have pertained to

all the premises covered by the last lease because those improvements were already in existence when that lease was entered into and could not by any possibility pertain to the premises demised by the last lease which were not demised by either of the two earlier leases.

We therefore hold that the covenant did not run with the land so as to bind the plaintiff trustee.

Another and as fatal an objection to defendant's claim arises from the fact that the defendant, on December 31, 1931, had ceased to be the plaintiff's tenant under the lease of February 28, 1924. In other words, the language of the tenth clause makes this money payable to the defendant *only* in case the renewal shall not be made and that "this lease terminates the 31st day of December, A. D. 1931". Now, on November 27, 1931, the plaintiff took possession of the leased premises for nonpayment of rent. In fact, defendant had not paid the rent due on November 1, 1931, for the month of October 1931. It had merely made the book entry above referred to and had not notified the plaintiff that it had done or claimed the right to do so. We think this was not a payment of rent within the meaning of the second clause of the lease.

Besides, it was clearly possible that the lease might terminate between November 27, 1931 and December 31, 1931, and that the defendant might never become entitled to the money payments provided for by the tenth clause of the lease. Had the premises been damaged by fire and the landlord elected not to repair, and such damage occurred after November 27 and prior to December 31, in the year 1931, the lease would have terminated, and by its very terms the defendant could not have become entitled to the money. Therefore, the crediting of the defendant and the charging of the plaintiff on the defendant's books with a sum equal to a month's rent was claiming a present credit for an obligation which was only contingently due and which by possibility might never become due.

In connection with the repossession of the leased premises by the plaintiff, the defendant claims that there was a mis-description of the leased premises in the notice handed to defendant at the time of the taking of possession by the plaintiff.

We think it was the *act of repossession*, not the notice, that terminated the tenancy. Plaintiff's agent went on the leased premises and took possession of *them*. Cases of mis-description in ejectment litigation are not in point. In those cases, the officer has only the notice or the writ to guide him. In this case, the plaintiff repossessed the *leased premises*. The mis-description in the notice was immaterial.

The defendant claims that plaintiff waived the default and reinstated the defendant's tenancy by bringing this suit and claiming "rent" for the period covered by the lease after the date of repossession. Defendant relies on the case of *Cavanaugh* vs. *Cook*, 38 R. I. 25 (1915).

We do not think that case controls. In the first place, that was an action of trespass and ejectment to recover *possession*. This is not an action to recover possession. It is an action for money. It is one thing to say, as in the Cavanaugh case, that the default was waived and the *tenancy continued while the defendant remained in possession and the period of the letting was still current*. It is quite another to say that a default is waived *by an act done after the period of the term has elapsed* and the defendant is no longer in possession. We think the Cavanaugh case does not go that far and we hold that the plaintiff did not waive the default by the bringing of this suit, the writ in which is dated April 25, 1933.

Another reason leading to the same conclusion is that there was a subsequent letting of the same premises by the plaintiff to the defendant and that

the plaintiff's demand for rent accruing after November 27, 1931, in the present suit is made for the rent under the oral letting.

We believe that the question of whether or not the covenants are dependent or independent is not important and we do not pass upon that question.

We think that the defence set up in the special plea can not be maintained and that the plaintiff is entitled to recover. The amount of recovery is:

Principal. . . . . . . . . . . .$1493.00
Interest. . . . . . . . . . . .   290.15

Total. . . . . . . . . . . .$1783.15

for which sum decision is hereby rendered for the plaintiff.

For plaintiff: Tillinghast & Collins.
For defendant: John R. Higgins.